The CONNECTICUT BANK AND
TRUST COMPANY, N.A.,
Plaintiff/Appellant,

v.

TENNESSEE DEPARTMENT OF
REVENUE, Defendant/Appellee.

FIRST NATIONAL BANK OF
BOSTON, Plaintiff/Appellant,

v.

TENNESSEE DEPARTMENT OF
REVENUE, Defendant/Appellee.

Supreme Court of Tennessee,
at Nashville.

April 3, 1989.

William M. Barrick, William R. Bruce, Bruce and Barrick, Nashville, for plaintiffs/appellants.

W.J. Michael Cody, Atty. Gen. and Reporter, Daryl J. Brand, Asst. Atty. Gen., Nashville, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

The plaintiffs brought action seeking refund of privilege taxes paid under protest pursuant to T.C.A. § 67–4–409. The cases for both plaintiffs were heard in the Davidson County Chancery Court. There does not appear to be any dispute on the material facts alleged. Each of the plaintiffs were involved in a multi-state financial arrangement which involved recording of instruments evidencing indebtedness and imposing liens on property located in the State of Tennessee as well as several other states.

The Connecticut Bank transaction involved a total principal indebtedness by Western Auto Supply Company in the amount of $67,000,000. The total value of collateral was $337,947,636 with $3,578,727 of that amount located in the State of Tennessee. Appropriate instruments were filed evidencing the above amounts. Plain-

tiff was required to pay a tax of $3,567.70 based on the indebtedness evidenced in their financing statement that the total principal indebtedness in Tennessee was $3,578,727. This amount was set in accordance with T.C.A. § 67–4–409(b) which fixes the recording tax to be ten cents (10¢) on each $100 of the indebtedness evidenced in the recorded instrument, less the exclusion of the first $2,000 of the indebtedness.

Circumstances involving the First National Bank of Boston are fundamentally the same. This plaintiff negotiated an agreement with the Wilson Sporting Goods Company to secure a total principal indebtedness of $125,000,000. The value of the total collateral as security for the loan was $203,000,000 with $45,000,000 of that amount located in the State of Tennessee. A financing statement indicated the total principal indebtedness in the State of Tennessee to be $45,000,000 and a tax of $44,998 was paid by this plaintiff.

In the court below each of the parties moved for summary judgment. The trial judge found that a party submitting an instrument of indebtedness for public recordation is presented with the option, under T.C.A. § 67–4–409(b), of stating the amount of indebtedness for which that party wishes to establish priority of its claims. Thus, in a transaction involving collateral located in Tennessee and collateral located elsewhere, the party submitting the instrument for recordation may either (1) pay mortgage tax upon the full value of the collateral in Tennessee, pursuant to T.C.A. § 67–4–409(b)(5), and thus establish priority as to the full value of that collateral; or (2) pay mortgage tax only upon the amount determined by the proration formula of T.C.A. § 67–4–409(b)(7), and thus establish priority only to that extent. Further finding that plaintiffs having stated their total principal indebtedness in Tennessee to be in the same amount as the collateral located in this State he held the tax on those amounts was properly calculated and collected. He granted summary judgment in favor of the Department of Revenue and

dismissed the separate actions of plaintiffs with prejudice.

It is the position of plaintiffs that T.C.A. § 67–4–409(b)(7) is a specific provision of the statute designed by the General Assembly to deal with multi-state transactions. They argue that the basis for taxation is a formula by which the value of the collateral located in Tennessee is divided by the value of the collateral located everywhere. The result of that division is a percentage by which the total indebtedness is multiplied to reach an amount upon which the tax is to be computed. In the case of Connecticut Bank this percentage equaled 1.6% which, applied to the total principal indebtedness under any contingency of $67,000,000, resulted in a total indebtedness in the State of Tennessee of $710,200 upon which the tax should be computed to be $708.20. In the Boston Bank case this formula equaled .22% resulting in a total tax indebtedness in the State of Tennessee of $27,500,000, upon which they say a tax should have been computed in the amount of $27,500.

The State argues that the ruling below was correct and that the statute provides a taxpayer with the option of either paying mortgage tax upon the full value of its collateral in Tennessee pursuant to T.C.A. § 67–4–409(b)(5) or pay mortgage tax only upon the amount determined by the proration formula of tax under (b)(7) of the statute.

The specific subsections of T.C.A. § 67–4–409 in question are as follows: [1]

(b)(5) As used herein 'indebtedness' means the principal debt or obligation which is, or under any contingency may be, secured at the date of the execution of the instrument or at any time thereafter. If the principal indebtedness secured or which by any contingency may be secured is not determinable from the terms of the instrument, or if the instrument is given to secure the performance by the mortgagor, grantor, debtor or any other person of a contract obligation other than the payment of a specific sum of

---

1. Subsequent to the initiation of the complaints in these cases T.C.A. § 67–4–409 was amended in 1986–87–88. The 1987 Acts, Ch. 275, §§ 1–4, effect changes in subsection (b), (5) and (7).

money, and the maximum amount secured or which by any contingency may be secured is not expressed therein, such instrument shall be taxable upon the value of the property covered by the instrument. The value of the property shall be determined by the receiving official charged with the duty of recordation and collection of the tax, unless, at the time of presenting the instrument, the owner thereof shall file a sworn statement of the maximum amount secured by the instrument. If such maximum amount is expressed in the instrument, or the aforementioned sworn statement, such amount shall be the basis of assessing the tax imposed under this item.

(b)(7) Where any part of the property standing as security for the payment of a debt is located part within and part without this state, only such proportion of the amount covered by the instrument shall be taxed as the value of the property within the state bears to the whole property. Value means only that value which the property would command at a fair and voluntary sale.

The practice of hypothecating property either real or personal as security to a creditor has existed as long as there have been people alive having something of value to lend and others who had the need or the desire to borrow.[2] In order to establish a priority among creditors the practice was initiated of registering or recording the instruments evidencing the indebtedness. Inevitably, as a by-product of this practice, the State began to levy a tax on the privilege of recording these instruments of indebtedness. According to the legend, such a tax has been in effect in this State as early as the Acts of 1805, and presently is an integral part of T.C.A. § 67–4–409, as noted. In this case, we agree with the result reached by the chancellor.

We are of the opinion that the statute does provide for alternative means of determining the amount of tax due on the various transactions that fall within its scope. For example, subsection (b)(5) provides in pertinent part that if the principal indebtedness secured is not determinable from the terms of the instrument, such instrument shall be taxable upon the value of the property covered by the instrument. This seems to us to be clear and unambiguous since the collateral covered by the instrument is usually greater in value than the amount to be secured. Thus it would be provident of a creditor to declare the amount of the debt where it is practicable to do so.

On the other hand, out of deference to parties engaging in interstate transactions, (b)(7) provides that where any part of the property standing as security for the payment of a debt is located part within and part without this State, only such proportion of the amount covered by the instrument shall be taxed as the value of the property within the State bears to the whole property. This sentence standing alone can only mean the whole property *standing as security* for the indebtedness, wherever such property may be located. (Emphasis supplied).

The formula suggested by plaintiffs as the proper measure of the total indebtedness to be recorded for the purpose of lien priority would be, not only impractical, but also, an imposition upon subsequent lien holders. In fact, the formula and the argument made in its support are in direct contravention. The example is given (1) that a lender with a debt of $1,000,000 secured by collateral worth $1,500,000, all in Tennessee, would pay tax on $1,000,000 of indebtedness and receive complete protection on the loan. (2) The same lender with a debt of $1,000,000 secured by property worth $1,500,000, half in Tennessee and half in Kentucky, under (b)(7) would pay tax on $750,000 and would be protected only to that extent. The argument continues, that in order to obtain full protection, assuming each State has the same statute, a creditor must pay double the amount in taxes. It is declared this is inequitable and a serious burden on interstate transactions.

That is not the case. Regardless of the amount of the indebtedness the security in

---

2. Old Testament, Nehemiah 5:3–4 "... we have mortgaged our lands, vineyards, and houses, that we might buy corn, ... we have borrowed money for the kings tribute, *and that upon* our lands and vineyards." (Emphasis in original text).

either State can be no greater than the amount of collateral available for lien priority purposes. Each State is governed by its own registration or recordation laws and neither can exercise control over security property located in the other. In *American City Bank v. Western Auto Supply*, 631 S.W.2d 410, 423 (Tenn.App.1981), the Court of Appeals of this State expressed the view that, "the effectiveness of any financing statement as an instrument of priority is limited in that respect to the amount upon which the privilege tax is paid." We consider that a sound statement of the law.

In construing statutes, this Court must give effect to the legislative intent, which is fundamental and paramount. See *Mercy v. Olsen*, 672 S.W.2d 196, 200 (Tenn.1984). It is within the power of a court whenever necessary to effectuate legislative intent to supply language in construing an act, inserting such words and clauses as may reasonably appear to be called for. *Scales v. State*, 181 S.W.2d 621, 181 Tenn. 440 (1944). By simply adding the words "standing as security" to the end of the first sentence of subsection (b)(7), the entire meaning of the subsection becomes abundantly clear. It seems equally clear that if a security lien is asserted in each State based on the value of the collateral located there the holder of the indebtedness will obtain the maximum amount of security available to him. The amount of the indebtedness does not enter into it.

We affirm the judgment of the chancellor insofar as it conforms to our analysis of this issue. The correct amount of tax was paid in each case in accordance with T.C.A. § 67–4–409(b)(7) as we have construed the legislative intent to be in its enactment. The summary judgment in favor of the defendant in each of these cases is correct. The costs of this appeal are assessed against the appellants.

DROWOTA, C.J., and FONES and HARBISON, JJ., concur.

